IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS E. AUGUSTINE,<br>    Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Civil Action No. 09-679<br>Judge Alan N. Bloch/<br>Chief U.S. Mag. Judge Amy Reynolds Hay |

## REPORT AND RECOMMENDATION

**Recommendation**

Plaintiff, Thomas E. Augustine ("Augustine" or "the claimant"), brought this action under 42 U.S.C. § 405(g), seeking review of the Social Security Commissioner's final decision disallowing Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f. Cross-motions for summary judgment are presently before the Court. For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted and the claimant's motion be denied.

**Report**

  **Background**

The claimant filed an application for SSI disability benefits on March 19, 2005, alleging an onset date of May 2, 2003, due to a herniated disc in his lower back and a pinched nerve (Tr. 95-101, 105-06 ). His claims were denied on August 4, 2005, and on August 29, 2005, the claimant requested a hearing before an administrative law judge ("ALJ") (Tr. 83-87, 88).

A hearing was held on September 6, 2006, at which time the claimant, who was represented by counsel, and a vocational expert ("VE") were called to testify (Tr. 38-81). The ALJ issued a decision on November 6, 2006 (Tr. 18-34), finding that, although the claimant had

disabling impairments, but for his substance use, he would not be disabled as defined under the Act (Tr. 33-34). The Appeals Council denied plaintiff's request for review on February 10, 2009, making the ALJ's decision the final decision of the Commissioner (Tr. 11-14).

**The ALJ's Decision**

The ALJ utilized the familiar five-step evaluation process articulated at 20 C.F.R. §§ 416.920(a) to determine disability eligibility and concluded that the claimant was disabled at the fifth step due to lower back and psychological problems as well as alcohol and substance abuse.[1] The ALJ also determined, however, that the claimant's substance abuse was a factor material to his disability and that, absent the claimant's alcohol and substance abuse, he could perform a significant number of jobs that exist in the national economy that accommodate his specific functional limitations (Tr. 33-34). In so finding, the ALJ relayed the claimant's history of alcohol abuse over the prior fifteen years and noted that the limitations on the claimant's daily activities and social functioning corresponded to periods of alcohol abuse and that even when under the influence of alcohol he was able to maintain a degree of cognitive functioning (Tr. 27-28). Although the ALJ concluded that the claimant would still have severe physical impairments absent alcohol use, he found that the objective medical evidence showed that, if the claimant stopped the substance use, his limitations on daily activities are no more than mild; that the limitations on his social functioning are no more than moderate; that the limitations on

---

[1] The five step analysis requires the Commissioner to consider, in sequence, the following: (1) If the claimant is performing substantial gainful work, he is not disabled; (2) If the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found to be disabled; (3) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled; (5) Even if the claimant's impairment or impairments prevent him from performing his past work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

concentration, persistence and pace are no more than mild; and that there was no medical evidence that the claimant has experienced or would experience episodes of decompensation (Tr. 31-32). Taking into consideration the claimant's age, education, prior work experience and residual functional capacity, as well as the VE's testimony that given all of these factors the individual would be able to perform work as a folder, an inserting machine operator, and a machine cleaner, all of which exist in significant numbers in the national economy, the ALJ concluded that the claimant was not disabled within the meaning of the Act (Tr. 34).

### Standard of Review

In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Id., quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999). Where the ALJ's findings are supported by substantial evidence, the court is bound by those findings, even if it would have decided the factual inquiry differently. Id.

### Discussion

Augustine's challenge to the ALJ's decision largely revolves around the ALJ's finding that he is not entitled to benefits because alcohol and drug abuse are a contributing factor material to his disability.

Under the Act, "disability" is defined as the inability to work because of a medically determinable impairment expected to result in death or last at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). The Act also provides, however, that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §

3

1382c(a)(3)(J). Thus, even where a claimant is found to be disabled, he or she is not entitled to benefits if either alcoholism or drug addiction is a contributing factor material to that finding.

Augustine maintains that he suffers from severe disabling depression which has persisted even during long periods of sobriety thereby precluding a finding that his alcohol abuse is a factor material to his disability. In the Court's view, however, Augustine's recitation of the record regarding his periods of sobriety and his inability to work during those periods is not only incomplete but is not entirely accurate.

The record establishes that on April 7, 2003, approximately one month before Augustine's alleged onset of disability (Tr. 96, 106), he presented to Washington Hospital for detoxification having had an acute episode of alcohol intoxication (Tr. 535-36, 539). The hospital records indicate that Augustine's blood alcohol content was .346 and toxicology screening was positive for amphetamines and opiates (Tr. 535). He was discharged six days later having been diagnosed with major depression and alcohol dependance (Tr. 535).

Three months later, on July 9, 2003, Augustine sought medical clearance at Washington Hospital to enter the Greenbriar Treatment Center for alcohol rehabilitation (Tr. 200-11, 552-63). At the time, his blood alcohol content was .37 (Tr. 210, 562).

On August 26, 2003, shortly after Augustine was discharged from the Greenbriar Treatment Center (Tr. 186, 565), he again presented to Washington Hospital with a blood alcohol content of .346 requesting "help [with] drinking [and] drugs" (Tr. 184, 192, 198, 564, 570, 577). He also acknowledged smoking crack cocaine (Tr. 187, 567), and his toxicology screen was positive for amphetamines (Tr. 193, 571).

The record does not reflect any instances of alcohol abuse over the course of the next year. During that time, Augustine reported in October of 2003, that his back pain was much better and that he had been able to work harder and longer jobs as a carpet layer (Tr. 220); in late

4

November of 2003, he reported that he had been working on and off and still really enjoyed carpet laying when he could do it and was attending AA meetings regularly (Tr. 221); and in March of 2004 he indicated that his pain was fairly well controlled (Tr. 221). In June of 2004, he presented to Dr. Sharpnack indicating that he had severe pain in his left ribs for about a week and had been unable to work (Tr. 218).

Then, on July 21, 2004, Augustine was admitted to the emergency room at Washington Hospital having had a seizure as the result of acute alcohol intoxication. (Tr. 168, 170-74, 181, 219). At a follow up appointment with Dr. Sharpnack on July 24, 2004, Augustine indicated that he had been working but that he had stopped going to AA meetings which triggered his relapse (Tr. 219). Dr. Sharpnack indicated that the seizure was probably due to alcohol withdrawal (Tr. 219).

Augustine reported to Dr. Sharpnack a month later, in August of 2004, that he had been going to meetings and had been alcohol free since the seizure. He also indicated that he had been working during that time (Tr. 216).

On September 16, 2004, Augustine presented to Dr. Sharpnack's office for depression and substance abuse having begun drinking after learning the night before that his younger brother had committed suicide.[2] Dr. Sharpnack's notes also indicate that up until then Augustine was working as carpet installer and frequently worked long hours (Tr. 610). Dr. Sharpnack arranged for Augustine to be admitted to the hospital, noting that his prognosis was based on his underlying alcoholism (Tr. 611). Augustine was, in fact, admitted to the Behavioral

---

[2] Although in his brief Augustine suggests that one of his brothers committed suicide in September of 2004, and another brother committed suicide in September of 2005, all records to which he points are from September of 2004. See Pl. Brief, pp. 6, 7-8; Tr. 140, 217, 608. Moreover, the hospital records indicate that the two suicides took place before his admission to the Behavioral clinic in September of 2004 (Tr. 608, 610, 612). Thus, while it is clear that two of Augustine's brothers committed suicide and that the younger brother did so in September of 2004, it appears that his older brother's suicide took place sometime before that and not in 2005.

Health Unit at Washington Hospital later that day and discharged on September 21, 2004 having been diagnosed with major depression, polysubstance dependence and pain disorder (Tr. 607-618).[3]

Following his relapse in September, Augustine did not return to work for at least a month (Tr. 214). On October 18, 2004, Dr. Sharpnack's records indicate that Augustine had been doing well and was not depressed (Tr. 214). The next entry, dated November 13, 2004, shows that Augustine was stable, going to regular AA meetings and had been able to return to work doing carpet installation in the interim (Tr. 214).

On February 10, 2005, Augustine was admitted to the Behavioral Health Unit at Washington Hospital for depression (Tr. 148-56, 619-20). On admission, he was wearing seven Fentanyl patches and his blood alcohol content was .065 (Tr. 151, 622, 625, 634). He had not been attending Alcoholics Anonymous meetings or outpatient therapy sessions at CARE (Tr. 622, 624). Augustine reported that he had been drinking for several months and had several beers prior to admission (Tr. 620). Indeed, he had reported to Dr. Sharpnack a month earlier that he had not been working (Tr. 214). Dr. Sharpnack opined that Augustine needed to be retrained because he could probably no longer do carpetry work because of his back (Tr. 215).

Medical records dated April 6, 2005, reveal that a friend of the claimant's called Dr. Sharpnack's office reporting that Augustine was shaking uncontrollably and that he had been taking sleeping pills, Soma and had been drinking (Tr. 532).

---

[3] While in the hospital, Augustine was seen by a pain specialist, Michael J. Platto, M.D., for his lower back problems. Dr. Platto found that Augustine had a full, active range of motion of the lumbar spine and no neurological deficits (Tr. 141). His straight leg raising test was negative, bilaterally (Tr. 141). An MRI of Augustine's lumbar spine performed on September 24, 2004, showed a mild disc bulge at the L4-L5 levels and mild to moderate degenerative disc disease at the L5-S1 levels (Tr. 674). There was no evidence of disc herniation, disc bulge or nerve root impingement (Tr. 139, 674).

On April 28, 2005, Augustine was evaluated by pain specialist Dr. Lloyd G. Lamperski (Tr. 224-26), who noted that when Augustine entered the room, the odor of alcohol was present and that Augustine reported being on a leave of absence (Tr. 225). Dr. Lamperski advised Augustine to abstain from alcohol so that he could prescribe medication as treatment for Augustine's complaints of pain (Tr. 226).[4]

Similarly, on May 4, 2005, Augustine presented to Dr. Richard Hahn for a consultive examination at the Commissioner's request (Tr. 230-32). Dr. Hahn also detected an odor of alcohol on Augustine's breath (Tr. 231). In fact, Augustine acknowledged to Dr. Hahn that he consumed six to twelve beers every day (Tr. 230). Dr. Hahn described Augustine's back pain as "mechanical," finding no evidence of radiculopathy (Tr. 232). He also indicated that Augustine had sensory neuropathy which was probably related to his alcohol use and that he believed that Augustine's alcoholism was the underlying cause of the pain in his legs (Tr. 232).

Augustine saw Michael Crabtree, Ph.D., for a consultative psychological evaluation on May 18, 2005, also at the Commissioner's request (Tr. 237-42). Augustine stated to Dr. Crabtree that he had been drinking alcohol during the prior month (Tr. 237-38).

Two days later, on May 20, 2005, the police transported him to Washington Hospital after he told a friend that he "was going to take a few pills" (Tr. 639-47). Augustine acknowledged that he had consumed alcohol prior to his admission (Tr. 639).

On June 15, 2005, Augustine was admitted to Washington Hospital for suicidal ideation (Tr. 648-71). He apparently stopped taking his prescribed medication and, again acknowledged that he had begun drinking alcohol (Tr. 649, 652). On admission, his blood

---

[4]Dr. Lamperski's examination revealed that the claimant's lower extremity strength was intact; he ambulated slowly and could barley perform squat maneuvers; that his lumbar flexation was limited to 45 degrees; that he had pain with lumber extension, bilateral lateral flexion and bilateral lateral rotation; that his straight leg raising test was negative, bilaterally; and that he had normal motor strength and sensation in his lower extremities (Tr. 225-26).

alcohol content was .326 (Tr. 652). He was discharged three days later, on June 18, 2005 (Tr. 649-50), at which time his Global Assessment of Functioning (GAF) was seventy (Tr. 650).[5]

On December 29, 2005, Augustine reported to Dr. Sharpnack that he had been going to AA meetings regularly and had moved into City Mission where he had been doing some work in their second hand store (Tr. 524).

In his notes dated February 27, 2006, Dr. Sharpnack noted that Augustine "has done very well" while living at the City Mission and indicated that Augustine was working forty hours per week in the shop and "was doing some extra carpeting for one of the other people that works there in their basement" (Tr. 523). According to Dr. Sharpnack, Augustine complained that his back was "bothering him some" (Tr. 523).

Finally, in Dr. Sharpnack's most recent notes, dated June 20, 2006, he observed that Augustine had been sober for six months (Tr. 522). Although Dr. Sharpnack noted that Augustine was still depressed, he also reported that he was doing okay on his medications and that his depression had started to stabilize. Dr. Sharpnack also reported that Augustine was doing "quite well in terms of his addiction problem" by living in the City Mission which provided a structured environment (Tr. 522).

These records appear to support the ALJ's findings that substance abuse is a factor material to Augustine's disability. Indeed, it appears that reports of Augustine's disabling depression and his inability to work all coincide with periods of alcohol abuse and corresponding periods of recovery. Conversely, the records show that during periods of sobriety Augustine was

---

[5]The GAF scale ranges from zero to 100 and is used by a clinician to indicate his overall judgment of a person's psychological, social, and occupational functioning on a scale devised by the American Psychiatric Association. American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (DSM-IV) 30 (4th ed. 1994). A GAF of 61 to 70 is assigned to an individual who has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. DSM-IV at 32.

not only working but his depression seems to have been under control. Indeed, during those periods, Dr. Sharpnack's notes often do not even mention Augustine's depression (Tr. 214, 216, 220, 524, 523). Moreover, in May of 2005, Dr. Hahn opined that the claimant's alcoholism was likely the source of the pain in his legs (Tr. 232), and in June of 2005, having just been released from the hospital where he presumably was not drinking, he had a GAF of 70 (Tr. 650). Thus, while the Court does not intend to minimize the fact that Augustine suffers from on-going depression, there is ample evidence in the record to support the ALJ's finding that his condition is controlled and only becomes disabling when he abuses alcohol.

Augustine nevertheless faults the ALJ for not giving countenance to Dr. Sharpnack's conclusion in June of 2006 (Tr. 522) that he was totally and permanently disabled when he had been substance free for a two year period, or Dr. Crabtree's assessment that he suffered marked limitations on his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting (Tr. 244). Augustine also argues that the ALJ "undertook an improper credibility determination." Pl. Brief, p. 13.

Augustine's representation that, except for two one-day relapses, he had been substance free for the better part of two years when Dr. Sharpnack found him to be totally disabled in June of 2006, however, is not bourne out by the record. As previously discussed, the record reflects at least eight reports of alcohol abuse since June of 2004, in addition to the "one-day" relapse he had in September of 2004, following his brother's suicide (Tr. 168, 170-74, 181, 219, 620, 532, 225, 230-1, 237-38, 639, 649, 652).

Moreover, while a treating physician's opinion should be accorded great weight when their opinions are based on a continuing observation of the patient's condition over a period of time, it is also true that the ALJ is free to reject that opinion where is it not supported by medical evidence and is inconsistent with other substantial evidence in the record. Johnson v.

9

Commissioner, 529 F.3d 198, 202 (3d Cir. 2008). See 20 C.F.R. § 416.927(d)(3). A treating physician's opinion may be afforded more or less weight "depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d at 429, citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.1985). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id., quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).

   Here, although the ALJ did not expressly discuss Dr. Sharpnack's June 20, 2006 opinion that Augustine was totally disabled, it is evident from the ALJ's decision that he considered it (Tr. 27). In fact, contrary to Augustine's argument, he does not even appear to have rejected it having found that, considering all of the claimant's impairments and based on the VE's testimony, the claimant was unable to make a successful vocational adjustment to work that exists in significant numbers in the national economy and that a finding of "disabled" at the fifth step of the sequential evaluation process was appropriate (Tr. 20, 30-31).

   The ALJ, however, went on to address, as he is required to do where there is medical evidence of a substance abuse disorder, whether the disorder is a contributing factor material to the disability determination (Tr. 20, 22, 30-34). See 20 C.F.R. § 416.935. To that end, the ALJ thoroughly reviewed the medical records which, as discussed above, amply support a finding that Augustine's complaints of depression and lower back pain largely coincided with instances of alcohol abuse and that during periods of sobriety his depression and back pain were not, by themselves, disabling. Indeed, Dr. Sharpnack also noted in his June 20, 2006 progress notes that although Augustine still suffered from depression he was doing okay on Cymbalta, Seroquel and Trazodone. Further, although Augustine reported at the time that his depression was "only now starting to stabilize," he reported only four months earlier that he was doing very well in the structured environment provided at the City Mission and was working forty hours a

week in the shop there and doing some extra carpeting on the side; his depression was not even mentioned (Tr. 523). The ALJ therefore determined that, absent the substance use, the claimant would have the residual functional capacity to preform the exertional demands of simple and routine light work in a structured setting with a sit/stand option and without more than the occasional postural movements or more than moderate exposure to moving machinery or unprotected heights (Tr. 32). The VE testified that given all of these limitations and taking into consideration the claimant's age, education and work experience, there were jobs that could be performed that existed in significant numbers in the national economy (Tr. 72-74).

With respect to Dr. Crabtree's assessment, Augustine particularly complains that the ALJ accepted only portions of his report without providing any explanation for why he rejected others and failed to point to any contradictory evidence.[6]

In determining the weight to be given to a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors. See 20 C.F.R. §§ 416.927(d)(1)-(6). Where the medical source has failed to provide relevant evidence to support an opinion, particularly medical signs and laboratory findings, their opinion is entitled to less weight. See 20 C.F.R. § 416.927(d)(3). The Commissioner is not bound even by a treating physician's opinion where

---

[6]To the extent that Augustine suggests that Dr. Crabtree's findings regarding his work related limitations should be accepted because Dr. Crabtree examined him after a "sustained period of sobriety," the record is to the contrary. See Pl. Brief, p. 17. Dr. Crabtree evaluated the claimant on May 18, 2005 (Tr. 237). Two weeks earlier, on May 4, 2005, Augustine admitted to Dr. Hahn, who had smelled alcohol on his breath, that he was drinking six to twelve beers a day (Tr. 230-31). A week before that, Dr. Lamperski also reported that an odor of alcohol was present when Augustine walked into the room (Tr. 225-26). Three weeks before that, on April 6, 2005, a friend called Dr. Sharpnack's office and reported that Augustine had been drinking (Tr. 532), and several months before that, on February 10, 2005, Augustine was admitted to Washington Hospital for depression and admitted that he had been drinking for several months (Tr. 620).

there is a lack of clinical data supporting it or if there is contrary medical evidence. Johnson v. Commissioner, 529 F.3d at 202.  Moreover, determining a claimant's residual functional capacity and whether or not he or she is disabled are issues reserved to the Commissioner and not the medical sources.  20 C.F.R. § 416.927 (e).

Here, as argued by the Commissioner, Dr. Crabtree did not provide or discuss any medical or clinical findings that would support his assessment that Augustine had marked limitations in his ability to perform work related activities, nor has Augustine pointed to any (Tr. 244).  Indeed, it appears that Dr. Crabtree merely checked off the boxes on the form and, thus, his assessment that Augustine suffered marked limitations on his ability to perform work related activities is entitled to little weight.  20 C.F.R. § 416,927(d)(3).  See Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best").

Moreover, Dr. Crabtree's opinion appears to be contradicted by other portions of his own evaluation in which he found that Augustine was well oriented to person, place and time; that he had no trouble with impulse control; that he had adequate judgment and showed good interpersonal perceptions and behaved appropriately during the interview; that he had adequate insight and was a reliable information giver; and did not demonstrate any unusual ways of reacting to social situations (Tr. 240).  Dr. Crabtree also found that Augustine's ability to maintain concentration, persistence, and pace was normal and that Augustine had no impairment in understanding, remembering, and carrying out simple or detailed instructions, and that his social functioning was only moderately limited (Tr. 241).  Thus, absent any objective medical evidence to support Crabtree's opinion that Augustine had marked limitations in his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting, it does not appear that it is entitled to much weight.

Indeed, several months after he was evaluated by Dr. Crabtree, Augustine's medical records were reviewed by State Agency medical consultant Edward Zuckerman, PhD, who not only found that Augustine was not significantly limited in fifteen of the twenty mental activities assessed and only moderately limited in the other five categories, but concluded that he is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments (Tr. 262-65).  In so finding, Dr. Zuckerman specifically considered Dr. Crabtree's report and indicated that it had not been given full weight finding that Dr. Crabtree's opinion with respect to Augustine's ability to perform work related activities was not consistent with all of the medical and non-medical evidence of record and was internally inconsistent (Tr. 264).

The ALJ reviewed the opinions of Drs. Crabtree and Zuckerman and indicated that to the extent that they were consistent with the majority of objective findings in the medical evidence, he agreed with them (Tr. 26-29).  Because Dr. Crabtree's findings regarding Augustine's work related activities were inconsistent with the objective medical evidence, the ALJ did not give them any weight.

Finally, it appears that Augustine has either misperceived or misrepresented the ALJ's findings regarding his credibility.  The ALJ found that the claimant was not entirely credible with regard to his allegations of pain, limitations, impairments and overall disability citing to the fact that he has been able to work as an independent contractor doing floor work since he returned to Pennsylvania in 1990 and, as recently as August of 2005, was working at the City Mission where he lived.  With respect to his alcohol and narcotics abuse, the ALJ found that the medical evidence showed that he has a tendency to be less than forthright citing to several exhibits which demonstrate that Augustine has been somewhat misleading about his substance abuse problems (Tr. 29).  For instance, he told Dr. Lamperski in August of 2005 that he had not

used illegal drugs for twelve years and does not drink when he is taking narcotics (Tr. 225), yet only two years earlier he reported that he uses crack (Tr. 567). As well, in August of 1996, he presented at Armstrong Memorial Hospital indicating that he had taken Librium, which he bought on the street, and indicted that he has been sober for two years and had just started drinking on July 4th (Tr. 409). The doctor, however, indicted that he knew it to be true that Augustine was drinking before July 4th. Moreover, his report to Dr. Crabtree in May of 2005, that he had been clean of the use of alcohol and drugs for twelve of the past fifteen years, like his assertion in his instant brief that he has had long periods of sobriety, is belied by the record. See Discussion above. Thus, the ALJ's conclusion that Augustine has a tendency to be misleading about the extent of his substance abuse problem, which Augustine acknowledges would create a credibility problem, is amply supported by the record. See Pl. Brief, p. 19 n.69.

**Conclusion**

As found by the ALJ, Augustine clearly suffers from several severe impairments including chronic back pain and depression. Although the Court is sympathetic to the challenges these impairments may present, it also appears clear from the record that his alcohol use is a factor material to his disability. Because the ALJ's conclusion that Augustine is capable of making a successful adjustment to work that exists in significant numbers in the national economy if he stopped the substance use is supported by substantial evidence and is consistent with the VE's testimony, it is recommended that Commissioner's Motion for Summary Judgment [Dkt. 14] be granted, and the claimant's Motion for Summary Judgment [Dkt. 10] be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in

accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights.

                                            Respectfully submitted,

                                            */ s/  Amy Reynolds Hay*
                                            Chief United States Magistrate Judge

Dated: 12 April, 2010

cc:     All counsel of record by Notice of Electronic Filing